UNITED STATES DISTRICT COURT
<u>NORTHERN DISTRICT OF NEW YORK</u>

UNITED STATES OF AMERICA,

 -against-             1:01-CR-131
                      (LEK)

STEVEN ROBINSON, a/k/a "Wise,"

      Defendant.

## **MEMORANDUM-DECISION AND ORDER**

**I. Background**

  The Court sentenced Defendant Steven Robinson ("Defendant") for his conviction on Counts 2 and 3 of a five-count First Superceding Indictment, conspiracy to distribute marijuana and discharging a firearm in relation to a drug-trafficking crime, on December 7, 2006. At the time of sentencing, the United States (or the "Government") objected to the Probation Office's failure to apply U.S.S.G. § 2D1.1(d)(1), the cross-reference for murder committed in furtherance of a drug offense, to enhance Defendant's sentence, and requested that this Court do so. U.S. Sentencing Mem. (Dkt. No. 453) at 3. The Court denied this request and writes this Order to supplement the oral Order of this Court issued at the time of sentencing.

  On November 18, 2002, Defendant Steven Robinson ("Defendant") was convicted on Counts 2, 3, 4, and 5 of a five-count First Superceding Indictment charging him with one count of conspiracy to distribute in excess of 100 kilograms of marijuana, two counts of discharging a firearm in relation to a drug-trafficking crime, and one court of causing the death of an individual in the course of using a firearm in relation to a drug-trafficking crime. The Court vacated the

1

convictions for Counts 4 and 5 and ordered a new trial with respect to those counts pursuant to Rule 33 of the *Federal Rules of Criminal Procedure*.  Mem.-Dec. and Order (Dkt. No. 360).  The Second Circuit upheld this Court's determination that the convictions should be set aside and a new trial granted.  United States v. Robinson, 430 F.3d 537, 542-43 (2d Cir. 2005).  The Court will assume familiarity with the factual history of this case, which was set out in its earlier decisions.

## II.    Discussion

As the United States correctly notes, the Second Circuit has held that "a sentencing judge would commit a statutory error in violation of [18 U.S.C. §] 3553(a) if the judge failed to 'consider' the applicable [Unites States Sentencing] Guidelines range (or arguably applicable ranges)."  United States v. Crosby, 397 F.3d 103, 115 (2d Cir. 2005).  Moreover, a sentencing judge would also violate § 3553(a)(4) by limiting consideration of the applicable Guidelines range to the facts found by the jury or admitted by the defendant, instead of considering facts found by the court.  See id.

When sentencing a defendant, a court may find facts relevant to the sentence by a preponderance of the evidence when arriving at a Guidelines sentence.  United States v. Florez, 447 F.3d 145, 156 (2d Cir. 2006).  The United States argues that a preponderance of the evidence establishes that Defendant is responsible for the murder of Jerome Johnson, and the Court must apply U.S.S.G. § 2D1.1(d)(1), the cross-reference for murder committed in furtherance of a drug offense, to enhance Defendant's sentence.  U.S. Sentencing Mem. (Dkt. No. 453) at 3.  In support, the Government cites, among other things, that Aukland Dubery testified that he heard a car engine and a screech, and turned his attention in the direction of the car.  U.S. Sentencing Mem. (Dkt. No. 453) at 4. Dubery testified that he saw only Defendant in the car and observed him put a red scarf over his face.  Id.  Dubery further testified that shots were fired from Defendant's white car.  Id.  In

addition, the Government highlights that David Hood and Archie Johnson observed a white car at the scene of the shooting. Id. at 5.  In further support of its view that Defendant was responsible for Jerome Johnson's murder, the United States points to Roman Caldwell's recollection that shots appeared to come from a white car at the scene of the shooting; although he could not see who was driving the car, he did see the driver's arm coming out of the driver's side window. Id. at 5-6.  The Government similarly cites Kelvin Willingham's testimony that he saw a white car at the scene and an arm and a gun protruding from the car's front window. Id.

     The Court finds that there is not a preponderance of the evidence to establish that Defendant murdered Jerome Johnson.  This Court previously set aside Defendant's conviction on the murder count because the evidence was too flimsy to support a conviction.  Mem.-Dec. and Order (Dkt. No. 360) at 4.  As this Court explained in its prior Order, Dubery was the only witness who identified Defendant as the driver of the white car.  However, Dubery admitted to smoking three marijuana cigars in the six hours prior to the shooting and, it is, therefore, highly likely that Dubery was under the influence of marijuana at the time that Jerome Johnson was killed. Immediately after the shooting, Dubery told police that he did not know who the shooter was. A few days later, while Dubery was recovering in the hospital, Dubery told a detective that he did not know who the shooter was. He changed his story and identified Defendant as the shooter only after his girlfriend, Rachel, discussed the potential benefits that Dubery could receive in exchange for his identification of the shooter.

     Dubery never stated that he saw Defendant fire a gun.  Dubery did not detail what happened after Defendant put on the red scarf and, instead, only vaguely testified that shots rang out soon thereafter.  At the time of the shooting, Dubery was awaiting sentencing on state charges stemming

from his possession of five pounds of marijuana. Rachel hoped that in return for Dubery's agreement to testify against Defendant, the police would drop the criminal charges that were pending against Dubery. While the police refused to drop the charges, they offered to enroll, and did enroll, Dubery, Rachel, and Rachel's child in the witness protection program, where they received tens of thousands of dollars in medical benefits and money. Dubrey's dubious testimony is exceedingly weak support to establish Defendant's responsibility for the murder.

The Government argues that when the Court denied Defendant's Motion for a judgment of acquittal on the murder count, the Court determined that a rational jury could have concluded, beyond a reasonable doubt, that Defendant committed the murder -- and that such a determination precludes a finding that there is not a preponderance of the evidence to establish Defendant's responsibility for Jerome Johnson's murder. U.S. Sentencing Mem. (Dkt. No. 453) at 7. While the Second Circuit expressed no view as to whether a subsequent conviction of Defendant on substantially similar evidence should be set aside, it did note:

> "[T]he numerous circumstances which seriously impeached Dubery's identification of [Defendant], particularly his having twice earlier told the police that he did not know who his assailant was and the fact that he never saw [Defendant] with the gun,. . . [and] the paucity of other evidence implicating [Defendant] . . .

Robinson, 430 F.3d at 543

The evidence presented here is the same as was presented at trial, and it does not sufficiently implicate Defendant in Jerome Johnson's murder such that the cross-reference for murder can be used to enhance his sentence. While this Court did not grant Defendant's Motion for a judgment of acquittal, that does not mean that a preponderance of the evidence establishes that Defendant is responsible for Jerome Johnson's murder. In the previous Order, the Court stated, "[a] motion for a

4

judgment of acquittal should thus be granted only if the evidence that the defendant committed the crime alleged is nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt." Mem.-Dec. and Order (Dkt. No. 360) at 1 (quoting United States v. Guadagna, 183 F.3d 122, 130 (2d Cir. 1999) (internal quotations omitted)).  While the Court did not grant an acquittal at trial, the standard for the denial of a Motion of judgment for acquittal under Rule 29 of the *Federal Rules of Criminal Procedure* permits there to be some quantum of evidence - even if it is insubstantial - that precludes an outright acquittal.  However, preponderance of the evidence is generally understood to mean that the "superior evidentiary weight that, though not sufficient to free the mind wholly from all reasonable doubt, is still sufficient to incline a fair and impartial mind to one side of the issue rather than the other." BLACK'S LAW DICTIONARY 1220 (8th ed. 2004). Accordingly, the weight of the evidence before the Court is such that a fair and impartial mind would not be inclined to believe Defendant was responsible for the murder based on the seriously impeached and flimsy evidence against Defendant.  Therefore, the Court declines to apply U.S.S.G. § 2D1.1(d)(1).

**III. Conclusion**

    Based on the foregoing discussion, it is hereby

    **ORDERED**, that the Government's request for the application of U.S.S.G. § 2D1.1(d)(1) is **DENIED**; and it further

    **ORDERED**, that the Clerk provide copies of this Order to the parties in this action.

**IT IS SO ORDERED.**

DATED:  December 07, 2006
             Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge